UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EVGENY RYZHOV, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 23-2794 (RC) |
| THE RUSSIAN FEDERATION, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Evgeny Ryzhov ("Ryzhov") brings this action against the Russian Federation ("Russia") under the Foreign Sovereign Immunities Act ("FSIA"), *see* 28 U.S.C. § 1602 *et seq.*[1] The Court granted Ryzhov's application to proceed *in forma pauperis* (ECF No. 2) by Minute Order on November 6, 2023, and now considers his *pro se* complaint (ECF No. 1, "Compl."). For the reasons discussed below, the Court DISMISSES the complaint and this civil action without prejudice for lack of subject matter jurisdiction, and GRANTS Ryzhov leave to amend his complaint.

## I. Background

Ryzhov attributes his woes to "officials, members, and agents of Russia and other agents and instrumentalities of Russia while acting within the scope of their official capacities." Compl. ¶ 5. He refers to "a group of senior officials from the General Prosecutor's Office ('GPO') and the Investigative Committee of the Russian Federation ('ICRF')," *id.* ¶ 9, dubbed "the Group."

---

[1] Although Ryzhov purports to represent "two adults and two minors," Compl. at 1, absent indicia that he is an attorney admitted to the bar of this Court, Ryzhov may not represent the interests of another person, *see* 28 U.S.C. § 1654. Evgeny Ryzhov is the sole plaintiff.

Although all of the Group's members are not identified by name or title, Ryzhov singles out

Alexander Drymanov, "a General of the ICRF," *id*. ¶ 14, who, among other things, allegedly (1)

threatened "to initiate a series of fabricated criminal cases against [him] if [he] refused to pay [a]

ransom" of $3 million, *id*. ¶ 30; *see id*. ¶¶ 36, 42; and (2) pressured a Russian court "to issue a

judgment" stripping Ryzhov of an interest in real estate, *id*. ¶ 49.  Otherwise Ryzhov's

allegations attribute acts to the Group or to Russia in vague and general terms.  *See, e.g., id*. ¶ 12

(alleging that "a few corrupt police officers, orchestrated by the [Group]," broke into and

searched Ryzhov's apartment, abducted him and held him hostage, "demanding that he sign

documents transferring clients' property to the Group's members"); *id*. ¶ 20 (alleging "members

of the Group, by forging a power of attorney from the Ryzhov's trust, stole an 80% stake" in a

limited liability corporation); *id.* ¶ 31 ("In a retaliatory act prompted by the Group and

sanctioned by the Russian Federation, [a] house and land were taken . . . and allocated to third

parties").  The purported purpose of these acts was to deprive Ryzhov of property, income

derived therefrom, other assets, and license to practice law, negatively impacting his ability to

support himself and his family in the United States.  *See, e.g., id*. ¶¶ 15, 44.  Ryzhov demands

compensatory, solatium and punitive damages exceeding $35 million.  *See id*. at 19-20.

## II. Subject Matter Jurisdiction and the Foreign Sovereign Immunities Act

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power

authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Because federal courts

are "forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116,

120 (D.C. Cir. 2008), judges have "an affirmative obligation 'to consider whether the

constitutional and statutory authority exist for [the Court] to hear each dispute,'" *James Madison*

*Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject matter jurisdiction over a case, the Court must dismiss it.  *See* FED. R. CIV. P. 12(h)(3).

The Foreign Sovereign Immunities Act ("FSIA") is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016).  It "creates a baseline presumption of immunity from suit," *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021) (citing 28 U.S.C. § 1604), and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state," *id*. (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).  The Court therefore "must make critical preliminary determinations of its own jurisdiction as early in litigation against a foreign sovereign as possible." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C. Cir. 2004) (citing *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000)).  Here, Ryzhov purports to proceed under the FSIA's terrorism, expropriation, and commercial activity exceptions.  *See* Compl. ¶ 4.

**III.  Discussion**

**A. Terrorism Exception**

Ryzhov accuses defendant of "acts of terrorism," Compl. ¶ 5; *see id*. ¶ 16, and accuses Russia of providing "material support and resources to the Group for the purposes of supporting, enabling, advancing, and benefitting from the terrorist activities of the Group against [a] permanent resident[] of the [United States]," *id*. ¶ 65, thus invoking the FSIA's terrorism exception, which provides:

> A foreign state shall not be immune from the jurisdiction of courts
> of the United States or of the States in any case not otherwise
> covered by this chapter in which money damages are sought against
> a foreign state for personal injury or death that was caused by an act

3

of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1).  It appears that the terrorism exception is inapplicable for two reasons.

First, an American court may hear a claim under this provision only if "the foreign state was designated as a state sponsor of terrorism at the time the [relevant] act . . . occurred," 28 U.S.C. § 1605A(a)(2)(A)(*i*) (I), and Russia is not among them.  Rather, only Cuba, the Democratic People's Republic of Korea (North Korea), Iran and Syria are designated "State Sponsors of Terrorism."  *See* https://www.state.gov/state-sponsors-of-terrorism (last visited Jan. 5, 2024).

Second, a complainant or victim must have been, at the time the relevant act occurred, a United States national, a member of the armed forces, or an employee or contractor of the United States.  28 U.S.C. § 1605A(a)(2)(A)(*ii*).  Ryzhov does not appear to fit any of these categories, although he allegedly became a lawful permanent resident of the United States, Compl. ¶ 1, after seeking asylum here at an unspecified time, *see id*. ¶ 14.

**B. Expropriation Exception**

Ryzhov next invokes the expropriation exception, *see* Compl. ¶ 4, which provides:

A foreign state shall be immune from the jurisdiction of the courts of the United States and of the States in any case . . . in which *rights in property taken in violation of international law* are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

4

28 U.S.C. § 1605(a)(3) (emphasis added).  The Court notes that none of the property or interests in property at issue is alleged to be present in the United States, that Russia is not alleged to own any of the property at issue, and that Russia is not alleged to have engaged in commercial activity in the United States.

Fundamentally, Ryzhov's reliance on the expropriation exception fails because Russia's alleged acts do not appear to violate international law.  The Supreme Court instructs that "the phrase 'rights in property taken in violation of international law,' as used in the FSIA's expropriation exception, refers to violations of the international law of expropriation and thereby incorporates the domestic takings rule." *Philipp*, 592 U.S. at 187.  In short, FSIA's expropriation exception refers to a country's taking of property from foreign nationals, not to a country's taking of property from its own nationals.  *See id*. at 179-80 (noting that "courts arrived at a 'consensus' that the expropriation exception's reference to 'violation of international law' does not cover expropriations of property belonging to a country's own nationals") (citation omitted); *Ivanenko v. Yanukovich*, 995 F.3d 232, 237 (D.C. Cir. 2021) (finding that "a foreign state's seizure of its citizens' property within its territory does not violate international law").

### C. Commercial Activity Exception

Lastly, Ryzhov relies on the FSIA's commercial activity exemption, which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2).  Neither of the first two clauses applies here: Ryzhov does not allege that Russia is engaged in commercial activity in the United States or that Russia performed an act in

the United States in connection with its commercial activity elsewhere.  Remaining, then, is the

third clause, which "applies if three requirements are met: (1) the lawsuit must be based upon an

act that took place outside the territory of the United States; (2) the act must have been taken in

connection with a commercial activity; and (3) the act must have caused a direct effect in the

United States."  *Ivanenko*, 995 F.3d at 238 (citations and internal quotation marks omitted).

Taking Ryzhov's factual allegations as true, this lawsuit is based upon acts occurring

outside the United States by a foreign State.  The claim fails, however, because the complaint

does not allege that the Russia's acts were taken in connection with commercial activity or that

its acts had a direct effect in the United States.

### 1. "Commercial Activity"

For purposes of the FSIA:

> A "commercial activity" means either a regular course of
> commercial conduct or a particular commercial transaction or act.
> The commercial character of an activity shall be determined by
> reference to the nature of the course of conduct or particular
> transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).  "In determining whether an act qualifies as commercial, a court must

'look[ ] to the character of the foreign state's exercise of power rather than its effects.'"  *Turan*

*Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan*, 406 F. Supp. 3d 1, 14 (D.D.C. 2019)

(quoting *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888 (D.C. Cir. 2006)) (additional

citations omitted), *aff'd*, No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022).  "[W]hen a

foreign government acts, not as regulator of a market, but in the manner of a private player

within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA."

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).  The Court need not

determine "whether the foreign government is acting with a profit motive," *id.*, and, instead, "the

issue is whether the particular actions that the foreign state performs (whatever the motive

behind them) are the *type* of actions by which a private party engages in trade and traffic or

commerce,'" *id*. (citations omitted) (emphasis in original); *see Nelson*, 507 U.S. at 360 ("We

emphasized in *Weltover* that whether a state acts 'in the manner of' a private party is a question

of behavior, not motivation[.]").

Ryzhov does not identify any particular commercial activity on Russia's part.

Presumably he means that any activity by a member of the Group, by Russia or any other

Russian government entity, or by any Russian official with regard to real estate, suffices.  But the

acts of which Ryzhov complains are not necessarily the type of actions in which private parties

engage in regular trade or commerce.  Essentially, Ryzhov alleges the Group committed criminal

acts by, for example, attempting to extort money from him, *see, e.g.,* Compl. ¶¶ 14, 36, 42,

threatening criminal prosecution, *see, e.g., id*. ¶¶ 14, 42, attempting to coerce him into divesting

himself and his clients of real property and income derived therefrom, *see, e.g., id.* ¶¶ 14, 27, 33,

and seizing property by eminent domain, *see id*. ¶ 56.  These do not appear to be acts of a

business entity in the private sector, and most, arguably, are the acts of a sovereign, even if the

alleged acts amount to abuses of authority.  *See Nelson*, 507 U.S. at 361 (finding that the conduct

at issue – Nelson's wrongful arrest, imprisonment and torture – "boils down to abuse of the

power of its police by the Saudi Government, and however monstrous such abuse undoubtedly

may be, a foreign state's exercise of the power of its police has long been understood . . . as

peculiarly sovereign in nature."); *Ivanenko*, 995 F.3d at 239 (concluding that taking of property

by eminent domain "could not have been carried out by a private participant in the marketplace,"

and did not satisfy the commercial activity exception); *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C.

Cir. 2005) (concluding that "the transactions between the Taliban, Afghanistan's former rulers,

and al Qaeda, a terrorist organization" are not commercial activity, as "[g]ranting refuge to

terrorist training camps is a uniquely sovereign act; it is not the sort of benefit that a commercial

landlord can bestow upon a commercial tenant"); *Youming Jin v. Ministry of State Security*, 475

F. Supp. 2d 54, 65–66 (D.D.C. 2007) (finding that "[i]t is simply not feasible for a private actor

to abridge civil rights in the ways alleged by the plaintiffs,' and their allegations do not amount

to a type of action 'typically performed by participants in the market.'" (quoting *Mwani,* 417

F.3d at 16–17)).

Ryzhov's position is weakened, too, by attributing a motive to defendant's actions,

namely retaliation for his financial and professional successes against the Group's interests, *see,*

*e.g., id*. ¶¶ 8, 10, resistance to the Group's efforts at coercion, *see, e.g., id*. ¶¶ 12, 14, 36, 42,

"grievance petitions to the Russian . . . authorities," *id*. ¶ 13, "involvement in human rights and

educational activities, which . . . diverged from the resurging pro-Soviet political sentiments," *id*.

¶ 11, and publication of "articles aiming to elucidate the malpractices of the Group and its

affiliated accomplices," *id*. ¶ 13.

### 2. "Direct Effects"

Even if Ryzhov adequately alleged that Russia engaged in commercial activity, he fails to

allege facts showing that Russia's actions "cause[] a direct effect in the United States."  28

U.S.C. § 1605(a)(2).  At bottom, Ryzov alleges Russia has deprived him of property and income

generated from assets in Russia with which he might support himself and his family in the

United States.  Financial loss does not qualify as a direct effect.  *See Guirlando v. T.C. Ziraat*

*Bankasi A.S.*, 602 F.3d 69, 78 (2d Cir. 2010) (noting that "the mere fact that a foreign state's

commercial activity outside of the United States caused physical or financial injury to a United

States citizen is not itself sufficient to constitute a direct effect in the United States"); *Gregorian*

*v. Izvestia*, 871 F.2d 1515, 1527 (9th Cir. 1989) ("However, mere financial loss suffered by a plaintiff in the United States as a result of the action abroad of a foreign state does not constitute a 'direct effect' and therefore cannot by itself create subject matter jurisdiction under section 1605(a)(2)."); *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (rejecting argument that "Saudi Arabia's failure to honor [a] contract has a direct effect in this country, because of the financial destitution [appellant] has suffered" since "financial hardship fortuitously suffered *in the United States* is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia"); *Bell Helicopter Textron Inc. v. Islamic Republic of Iran*, 892 F. Supp. 2d 219, 229 (D.D.C. 2012) (quoting *Millicom Int'l Cellular v. Republic of Costa Rica*, 995 F. Supp. 14, 22 (D.D.C. 1998)) (concluding that plaintiff's "mere financial loss due to commercial activity abroad is not, in itself, sufficient to form a 'direct effect'"), *aff'd*, 734 F.3d 1175 (D.C. Cir. 2013); *see also Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 90–91 (D.C. Cir. 2005) (where appellant failed to demonstrate an " agreement—implied or express—that [he] was to be paid in the United States," he cannot show Saudi Arabia's failure to deposit funds in bank accounts in the United States caused a direct effect in the United States).

For these reasons, it is hereby

ORDERED that the complaint and this civil action are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction; and it is further

ORDERED that, within 30 days of this Order, plaintiff may file a motion to reopen this civil action along with an amended complaint.

SO ORDERED.

DATE: January 8, 2024                          /s/
                                               RUDOLPH CONTRERAS
                                               United States District Judge